Edward M. Stout and Grace Stout v. Commissioner.
Stout v. Commissioner
Docket No. 31900.
United States Tax Court
1953 Tax Ct. Memo LEXIS 386; 12 T.C.M. (CCH) 52; T.C.M. (RIA) 53030; January 30, 1953
Raymond A. Fox, Esq., for the petitioners. Charles S. Gray, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' income taxes as follows: 1945
$3,470.59
1946
7,332.33
*387 Six issues were raised by allegations of error in the petition filed herein. At the trial petitioners stipulated that they had abandoned four of these issues. The remaining issues are whether petitioners are entitled to deductions under the provisions of section 23 of the Internal Revenue Code(1) for losses claimed in 1945 and 1946 to have resulted from the maintenance and operation of property known as Hilltop Farm, and (2) for a loss claimed in 1946 to have resulted from his business of horse racing. Findings of Fact The facts stipulated are found accordingly. The petitioners are husband and wife, residing at 121 Ottawa Drive, Pontiac, Michigan. The joint returns for the periods here involved were filed with the collector of internal revenue for the district of Michigan at Detroit, Michigan. Issue 1. Hilltop Farm The petitioner, Edward M. Stout (hereinafter referred to as the petitioner), is engaged in the business of buying and selling real estate on a commission basis. He also speculates in residential, business and farm property. He maintains an office and employs a secretary-bookkeeper. In 1925 petitioner purchased the Hilltop Farm (hereinafter *388 referred to as Hilltop) for $58,800. This property, located near Rochester, Michigan, contains 71 acres, including 15 acres of woods and an orchard of four or five acres. The buildings consist of a six-room house and a barn. Petitioner had had two sons, one of whom had suffered from tuberculosis, and the other of which, Edward M. Stout, Jr., he believed, was not too strong. Immediately after petitioner purchased the farm his son, Edward M. Stout, Jr., moved into the house on the farm and has lived there with his family ever since. Petitioner furnished the house for his son, gave him a car, and has contributed regularly to his living expenses. Petitioner's son managed the farm and took care of any horses that were stabled there. The following items are claimed as expenses for Hilltop: 1945
1946
Painting and Decorating
$ 264.33
$3,270.51
Repairs to Building and
Equipment
376.53
798.09
Taxes
251.68
242.40
Insurance
140.61
188.78
Heat and Light
288.59
116.58
Miscellaneous
311.26
319.57
Depreciation
564.00
564.00
$2,197.00
$5,499.93
Plainting and decorating for 1945 consisted of painting the home, interior decorating, upkeep of furniture, *389 and cleaning rugs. In 1946 the large painting expenditures resulted from painting the fence around the entire farm, individual fields, the outside of the house and barn. Insurance on the car furnished petitioner's son was charged to the farm. Petitioner received occasional income from the orchards and some corn and hay that was sold. In 1945 and 1946 petitioner owned eight farms including Hilltop. Some of these farms had been owned for 25 years or more, namely, Dingle Farm and O'Leary Farm. All real property owned by petitioner is carried in his books and records as real estate held for resale. Included in this classification is petitioner's home. Hilltop was located adjacent to several large and costly estate farms and was reasonably valued at not less than $1,300 per acre in the late 1920's and early 1930's immediately prior to the depression. Such a valuation would at that time have enabled petitioner to realize on sale a gross profit of $33,500 over the purchase price. During the taxable years here involved petitioner valued it at from $55,000 to $60,000. Hilltop has never been subdivided and was never advertised for sale to and including the taxable years 1945 and 1946. Hilltop *390 was owned and maintained by petitioner during the taxable years here involved not for business purposes but rather as a home for his son and the son's family and the stabling and pasturing of his race horses. Issue 2. Horse Racing Business Petitioner has been interested in horses ever since he was 12 years old. In 1901 he started a horse market in Pontiac, Michigan, where he bought and sold farm, buggy and race horses. His market developed to the extent of supplying a carload of horses a week. After operating the horse market for 15 years he had accumulated about $100,000. Petitioner then devoted his time to his real estate business and to race horses. He personally trained and drove trotters in 1935 and 1936. He has always owned seven or eight trotters and at one time thirteen. He raced his horses on half-mile and mile tracks in Michigan and through the East and South. His most successful horse was Peter, The Brewer, which he was racing in 1935. This horse set a track record at Lexington, Kentucky, and won or placed in nearly every race in which it was started. Petitioner owned race horses in 1945 but did not race because of difficulties in transporting the horses due to the *391 gasoline shortage caused by the war. In 1946 he owned five trotting horses, only one of which was raced that year. This horse took part in 34 races in 1946, winning about $1,300. The other horses were being groomed to race and did race at a later date. This racing was on half-mile tracks at the smaller county fairs in Michigan. At these races the purses are usually $500 with the owner of the winning horse receiving $200 or $250. During training the horses were placed in the care of a trainer at Northville, Michigan. In the wintertime the horses were kept at Hilltop. Expenses of Hilltop are charged to "property held for resale" and not to the so-called racing operation. There is no indication on the face of petitioner's income tax returns that he was in the race horse business. Petitioner had no records to show his racing winnings or expenses for years prior to 1940. He stated that he had records since 1940 which were easily obtainable but did not present these records. Petitioner testified that in a good many years his income from racing was greater than expenses but could not state what years they were. Expenditures for horse racing in 1946 were $5,429.41 for training and entrance *392 fees. There was a net loss of $4,121.94. Petitioner was not engaged in the race horse business in 1946. Expenditures were personal and are not deductible under section 23 (a) (1), Internal Revenue Code. Opinion Issue 1. Hilltop Farm Respondent's deficiency notice states: "It is held that farm losses claimed in the amounts of $2,197.00 and $5,499.93 in the taxable years 1945 and 1946, respectively, are not allowable under Section 23 of the Internal Revenue Code as losses incurred in a trade or business." Petitioner contends that Hilltop was an inventory asset of his real estate business and expenditures claimed as deductions were ordinary and necessary in the carrying on of said business under section 23 (a) (1) (A) of the Internal Revenue Code. [1] He also contends that these expenses were ordinary and necessary expenses paid for the production of income and the management, conservation and maintenance of said property in accordance with the provisions of section 23 (a) (2) of the Internal Revenue Code. [1] We disagree with these contentions. *393 The evidence as a whole does not support petitioner's position. We do not agree that Hilltop was held by petitioner for resale. The fact that it was carried on his books as property for resale is not determinative of the issue. His home was carried on the books under such an account. Apparently the resale account was not what its designation implies for horse racing activity is also reflected therein. Bookkeeping entries, in some circumstances of evidential value, are not determinative of tax liability. Terminal Investment Co., 2 T.C. 1004. After petitioner bought the farm in 1925, his son and son's family occupied the property and have continued to reside there for over 25 years. Petitioner proved rather conclusively the salability of Hilltop yet he has never advertised the farm for sale prior to, during or since, the taxable years in issue. He testified that the deducted expenditures were made to keep the property in condition for resale. It is true that it is usually necessary to keep property in good condition to render it marketable, but we believe petitioner's dominant motive in making these expenditures was to provide his son, who was not too strong and never *394 had an occupation, with a comfortable home. Lastly, petitioner testified that he had recently sold farms in the same general area as Hilltop, which farms he had purchased some 25 years ago when he acquired Hilltop. The fact that other of petitioner's farms were sold lends support to respondent's findings. They were actually held for resale while Hilltop was in reality held as a residence and occupation for his son and a stable and pasture for his trotting horses. Contrary to petitioner's claim that he purchased the farm for speculation, this record is barren of any indication that he ever treated the property as a business investment except that in 1952 he informed a few of his brother realtors Hilltop was for sale. Petitioner has not, on trial or in his brief, indicated clearly a contention that Hilltop expenses for the years in issue are properly deductible because the same was held for the production of income by reason of its use as a stable and pasture for race horses, which horses were in turn used for the production of income, but we must assume from the record and pleadings that he so contends. Due to our decision on the second issue, we find it unnecessary to comment with *395 respect to such contention at this point. We conclude that the expenses of Hilltop were not incurred in petitioner's real estate business, nor were they incurred in the maintenance of property held for the production of income. These expenditures were made for the purpose of maintaining a home for his son and son's family and the carrying on of his horse racing hobby. Such expenditures are personal and are not deductible for tax purposes. Section 24 (a) (1), Internal Revenue Code. [2]
Issue 2. Horse Racing Business As to the second issue, respondent's deficiency notice stated: "It is held that a loss claimed in 1946 in the amount of $4,121.94 from racing operations is not allowable as a loss under the provisions of Section 23 of the Internal Revenue Code since the record does not establish that you were engaged in the business of horse racing." Petitioner contends that the expenditures made with respect to his race horses were incurred in *396 the carrying on of a business and deductible under section 23 (a) (1) (A) (see footnote 1). The issue must be determined by inquiry into the character of petitioner, the conditions under which he undertook and carried on his race horse activity, the extent of his interest in the conduct of its operation, his losses and gains, and his belief as to the possibility or probability of financial gain in connection therewith. James Clark et al., Executors, 24 B.T.A. 1235, 1238. The Commissioner having found a deficiency, we must conclude at the outset that he did so on the basis of the fact that the expenditures sought to be deducted by petitioner were incurred and paid by him as personal expenses not connected with horse racing as a business. Petitioner must, in order to prevail, bear the burden of proof in each of the fields of inquiry referred to. This he has not done, and we conclude therefore that petitioner was not conducting his racing operation as a business. We can come to no other conclusion from this record than that petitioner would have maintained and kept trotting race horses regardless of the possibility or probability of his deriving a profit therefrom. *397 Harry C. Fisher, 29 B.T.A. 1041, 1050. He owned his first horses at the age of twelve, and in spite of an education limited to the third grade was able to conduct successfully for 15 years a profitable horse market in the city of Pontiac, Michigan, to and including the year 1916. He had by then amassed solely from this business about $100,000. During the horse market years he bought and sold and raced trotting horses, but we find that it was at this point at which he ceased dealing in horses and in racing them as a business. Never thereafter, and particularly in the year 1946, was he engaged in horse racing as a business. The fact that this record is devoid of any indication that petitioner, either in his horse market days or thereafter, made a profit from racing further convinces us in this regard. Prior cases, James Clark et al., Executors, supra; Margaret Amory, 22 B.T.A. 1398; George D. Widener, 8 B.T.A. 651; and Harry C. Fisher, supra, bear upon this issue. Study of the cited cases, in each of which, with the exception of the Fisher case, the issue was decided for the taxpayer, discloses a pattern. The taxpayer *398 in each instance was able to show, and did show, that the taxpayer entered the horse race business planning to make a profit therefrom and that thereafter he either conducted the business himself or was in close supervision thereof; that the taxpayer was concerned throughout his conduct of the race business with the profit element thereof. It is true that in the Widener case there is an indication the taxpayer entered the business because he was an outdoorsman and had long been interested in race horses, but strong evidence was available to the Court that Widener was particularly attentive to the business and was much concerned with operating at a profit. In the case at bar there is no evidence that after the year 1935 petitioner concerned himself to any great extent with horse racing so far as his personal connection therewith is concerned. He no longer drove in horse races; he left his horses on Hilltop for pasture under the oversight of his son when they were not in training, at which time they were under the care and management of professional trainers. Petitioner was not concerned with the profits of horse racing even to the extent of keeping accounts in connection therewith *399 until about the year 1940. He stated, on trial, that the records of earnings of his horses were readily available at the various racing associations throughout the country, but he did not offer in evidence those records or any proof in connection therewith; indeed such records (since 1940) as were received in evidence disclose that he suffered a loss in each year. He stated, on trial, that his horse racing activities had resulted many years in substantial financial gain but offered no record thereof. The rule is well established that failure of a party to produce evidence within his possession or available to him, which if done would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. This is especially true where, as here, the party failing to produce the evidence has the burden of proof. Wichita Terminal Elevator Co., 6 T.C. 1158, 1165. It is significant that petitioner has not, in his 1945 return of income tax, sought to deduct any amount as expenses attributable to the race horse business. In that year he had no income resulting from racing activity, for racing was not conducted by him due to his inability to transport his *400 horses because of the gasoline shortage then subsisting. It is significant too that in the year 1946, for which he seeks to deduct race horse expense, he was possessed of a money winning mare which he raced many times and which produced an income, by way of purses won during said year, of some $1,300. However, petitioner's net loss here sought to be deducted for that year is $4,121.94. In 1935 petitioner had a horse which was a winner, taking first or second prize in nearly every race in which it started. It won during that year with the exception of 1946. We must assume, because petitioner has failed to carry his burden of proof, that no profit was realized in any year. Petitioner, obviously a good business man, retired from horse dealing as a business in 1916. Why he did so is not disclosed by the record. There is no showing he had not determined at that time that the automobile would, as it did, supplant the horse in business and thereby render horse dealing a dying enterprise. In other words, we believe petitioner had determined that the probability of profit from horse racing was remote and that in order to engage therein it was necessary for him to concentrate his efforts on *401 a profitable business, namely, his real estate holdings. We are further constrained to hold against petitioner on this issue because of the theory upon which this case was tried, namely, that Hilltop was held solely for resale in petitioner's real estate business, and that expenses incurred by him in connection therewith are deductible solely for that reason. It is worthy of note that had petitioner actually believed he was engaged in horse racing as a business he would in all probability have claimed all Hilltop expenditures as horse racing expenses. Likewise, he would on that basis have sought to deduct the cost of maintaining his son, as it is apparent that the primary use made of Hilltop was as pasture and stable for race horses, and the only occupation of the son was to manage the farm and care for the race horses. Indeed, had petitioner so presented his case, he would have supplied one of the elements present in the cited cases which is lacking upon this record. In the cases cited an apparent and deliberate plan to operate horse racing as a business is readily discernible. Part and parcel of this plan and basic thereto is the acquisition and maintenance of an establishment *402 for the purpose of stabling and training of race horses. Petitioner's position in this case forces the conclusion on our part that he kept his race horses on Hilltop because it was a convenient method of reducing the cost of an expensive hobby and provided an occupation for his physically weak son. Petitioner's horse racing expenses sought to be deducted by him for the year 1946 are personal in nature. He was not engaged in the horse racing business. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (1) Personal, living, or family expenses * * *↩