WILLIAM L. FOX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
FOX v. COMMISSIONER
Docket No. 23391-81.
United States Tax Court
T.C. Memo 1985-82; 1985 Tax Ct. Memo LEXIS 550; 49 T.C.M. (CCH) 801; T.C.M. (RIA) 85082; February 25, 1985. William L. Fox, pro se. *552 Vera E. Gilford, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioner's income tax liability for the years and in the amounts as follows: Years
Amounts
1977
$159.00
1978
632.64
1979
640.00
These deficiencies all arise out of the disallowance by respondent of capital loss deductions claimed on petitioner's income tax return for the year 1977 of $2,000 and for the years 1978 and 1979 of $3,000 each, all carried forward from a net capital loss in the amount of $25,479.15 claimed on his return for the year 1976. The principal component of this net capital loss is a loss in the amount of $27,450 suffered in a sheriff's sale of petitioner's undivided interest in his former residence. For convenience our findings of fact and opinion are combined. Some of the facts have been stipulated and are so found. When the petition in this case was filed petitioner's residence was in Jupiter, Florida. Capital Loss
The loss on the former residence claimed by petitioner in 1976 arose out of the following sequence of events. In 1972, petitioner and his then *553 wife, Florence E. Fox, purchased as tenants in common [1] a house and lot in Tequesta, Florida (the Tequesta property) which they occupied as their residence until 1975. By order of the Circuit Court for the Fifteenth Judicial Circuit of Florida in and for Palm Beach County (the Circuit Court) dated September 23, 1975, petitioner was directed to vacate the Tequesta property on or before September 21, 1975. Mrs. Fox was given temporary and exclusive possession both of the house and its contents. By order of the same court dated March 30, 1976, petitioner and Mrs. Fox were divorced with exclusive possession of the Tequesta property and its contents granted to Mrs. Fox while she continued unmarried and residing therein with the parties' minor child. Among other provisions the divorce decree also gave Mrs. Fox a judgment against petitioner for a specific sum for arrearage of support and other monies, and Mrs. Fox's attorney was given a judgment against petitioner for the sum of $2,170.80. Levy was made upon the undivided one-half interest of petitioner in the Tequesta property to satisfy the attorney's judgment. This levy resulted in a sheriff's sale of petitioner's interest in that *554 property at public auction held on July 22, 1976 for $1,000.Mrs. Fox became the purchaser, at the instance of her attorney, and received a sheriff's deed to the property on the same date. In the meantime in April 1976 petitioner and his former wife listed the Tequesta property for sale with a realtor at an asking price of $74,900. The listing was thereafter withdrawn or suspended by Mrs. Fox without petitioner's consent. On July 30, 1976, Mrs. Fox entered into a contract of sale, consummating the sale by deed dated August 17, 1976 at a price of $66,500. [2]
Petitioner has contended that his former spouse and her attorney defrauded him by purchasing *555 his undivided interest in the property for $1,000 in anticipation of sale of the property. He has filed a variety of civil actions in the Circuit Court against his former wife, her lawyer and various other lawyers who have heretofore represented him with respect to various aspects of the sale of his interest in the house, on account of loss of his interest in the contents and with respect to certain matters involving Winslow-Fox, Inc., a corporation. One or more of those actions appears to be still pending on appeal, and apparently none has resulted in any judicial determination that petitioner was defrauded. In this action petitioner's claimed 1976 loss on the sheriff's sale of his interest in the Tequesta property is bottomed on his theory that the listing of that property by the Foxes, was or at least evidenced, a transaction entered into for profit within the meaning of section 165(c)(2). [3] The transaction was closed on August 17, 1976, according to petitioner's theory, by the deeding of the property by Mrs. Fox to her purchasers. The specific loss arose out of the sheriff's sale. On petitioner's 1976 income tax return the loss on this transaction in the amount of $27,450 *556 is reported as taking place on July 22, 1976. The amount reflects one-half of the property's cost in 1972, reduced by the $1,000 paid (by crediting on the execution judgment) at the sheriff's sale. Petitioner's legal authority for his position appears to be a statement in the Commerce Clearing House, Inc. Standard Federal Tax Reporter which reads as follows: Transactions entered into for profit may consist of many different types of activities. For instance, the sale of property may be a transaction entered into for profit, in which case the loss on sale would be deductible under Sec. 165(c)(2) as a loss on a profit transaction. This would be true, however, only if the property was used for the purpose of deriving investment income or was purchased with the expectation of deriving gain from appreciation in value and subsequent sale. Vol. 2 at P1532.01 (1984). To the extent pertinent, section 165(c)(2) reads as follows: In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * (2) losses incurred in any transaction entered into for profit, *557 though not connected with a trade or business; * * * A loss on a personal residence simply does not fit within this Code section. Any loss upon the sale of a personal residence is a personal loss, nondeductible under section 262. Respondent's regulations are explicit on this point: A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a). [Section 1.165-9(a), Income Tax Regs.[4]] A residence may be converted into business property so as to make section 165(c)(1) applicable, but there is no evidence that such occurred in this case. It is true *558 that sometime prior to the sale petitioner vacated the premises, but the record fails to indicate that Mrs. Fox ceased to use the Tequesta property as her residence at any time prior to the consummation of the sale. Pursuant to the decree of divorce she and petitioner's minor child had the right of occupancy, and their occupancy as a residence under these circumstances characterizes petitioner's use of his undivided one-half interest therein. From the purchase of the Tequesta property in 1972 to September 1975 petitioner and his wife both occupied the property as their residence. Petitioner's forced abandonment of the property pursuant to the initial Circuit Court order did not alter the residential use by petitioner who continued to have the legal obligation under Florida law to support both his wife and minor child, including providing a home for them. Continuance of that obligation in the final decree of divorce did not alter the personal character of the use by petitioner of his one-half interest in the property. See e.g., Stout v. Commissioner, a Memorandum Opinion of this Court dated Jan. 30, 1953, [5] affd. 210 F.2d 607 (6th Cir. 1954). Moreover, *559 the mere listing of a residence for sale with a real estate agent does not convert the residence to income-producing purposes. Neither is it a "transaction entered into for profit" under section 165(c)(2). Grammer v. Commissioner,12 T.C. 34, 37 (1949). Abandonment of property as a residence without more does not convert the property from personal use. There must generally be evidence of rental of the property or at least bona fide offering for rent, or evidence that the property is being held for appreciation in value during a period subsequent to termination of personal use as a residence. Newcombe v. Commissioner,54 T.C. 1298 (1970), see especially J. Drennen concurring, 54 T.C. at 1304; Leslie v. Commissioner,6 T.C. 488 (1946).[6] The evidence simply does not support petitioner's position on this issue. *560 Petitioner's contention that some part of the house had been used for business purposes, apparently for the business of Winslow-Fox, Inc., would not change the result. The use of a small portion of a residence for business purposes does not change the predominant character of the structure as a personal residence. Moreover, any use petitioner may have made of any portion of the residence for business purposes was abandoned when he himself vacated the premises pursuant to the Circuit Court decree well prior to the levy on and sale of his one-half interest. [7]
Theft Loss
Petitioner also claims that he suffered *561 a loss in the year 1979 when he discovered that he had lost through fraud a part of the value of his interest in the contents in his former residence. However, petitioner's assertion of such a claim does not establish the fact of a loss under section 165(c)(3). There is no evidence in this record on which to base such a claim. Petitioner has simply not established that he was defrauded in connection with the partition sale of the household contents or, if such fraud did occur, that he has no right of action against the participants for reimbursement. [8]"For tax purposes, whether a theft loss has been sustained depends upon the law of the jurisdiction" where it occurred, in this case Florida. Monteleone v. Commissioner,34 T.C. 688 (1960); see also Zaccaria v. Commissioner,T.C. Memo. 1961-102. We hold for respondent on this issue. *562 Bad Debt and Stock Losses
During the course of the trial, petitioner asserted that certain indebtedness of Winslow-Fox, Inc. to him and his stock interest in that corporation became worthless during 1979 or one of the other years before the Court. This corporation was formed by him prior to the years before us. All of the outstanding stock is owned by petitioner and his former wife. Petitioner's claims as to the debts and stock are reflected in an amended individual income tax return for the year 1979 filed by petitioner during 1983, a copy of which was introduced into evidence. Respondent's counsel at the request of the Court and with little assistance from petitioner has made strenuous efforts to determine the amount of unpaid indebtedness owed to petitioner by the corporation, his basis in his Winslow-Fox, Inc. stock and the year in which the indebtedness and stock became worthless, if in fact either event has occurred. The corporation was placed in receivership by order of the Circuit Court dated March 17, 1978, said order formally dissolving the corporation and forfeiting its "corporate rights, privileges and franchises." [9] The order also recites that the corporation *563 conceded that it was insolvent. A receiver was formally appointed by order of that court dated April 13, 1978, the receivership continuing at least through the trial of this case. The receiver's report as of December 31, 1978, reflects total assets of $553.62 in a checking account and in a savings account. However the U.S. corporation income tax return filed by the receiver for the fiscal year ending July 31, 1978 includes as assets land with a book value of $23,360 and other assets consisting of a note receivable and a loan receivable of $7,908. The official records of Palm Beach County, Florida disclose that the real property which Winslow-Fox, Inc. acquired by deed in 1976 was conveyed by the corporation in December 1977, and the proceeds of this sale apparently were deposited into the registry of the Circuit Court in that year. The receiver's several reports show that he has never taken possession of any land belonging to the corporation or of the notes described in the corporate income tax returns. [10] Thus the assets of the receivership as of December 31, 1978 consist entirely of cash. [11] The actions by the Circuit Court in the civil action above referred to dissolving *564 the corporation and appointing a receiver constitute identifiable events occurring in the year 1978 which bear on the likelihood of any repayment on the outstanding indebtedness of the corporation to petitioner and on the value of his stock interest in the corporation. The concession made by the corporation in that court proceeding of its insolvency is similarly significant. On December 31, 1978, it was clear that there were no assets available for payment on indebtedness or for distribution to the shareholders. The fees and expenses of the receivership would inevitably consume the available cash, and if there were any excess, it would not be sufficient to pay the accrued but unpaid interest due on the indebtedness. *565 At the same time, there was then outstanding indebtedness of the corporation to petitioner and to Mrs. Fox Totaling $28,000 evidenced by the following notes: Note dated 3/7/72
$4,500
Note dated 5/2/72
$8,000
Note dated 5/16/72
$5,000
Note dated 8/18/72
3,000
Note dated 8/15/74
$7,500
One-half of this indebtedness, or $14,000, remains unpaid to petitioner. [12] In addition, there is an unpaid balance of $489.62 on a Winslow-Fox, Inc. note payable to petitioner, dated September 9, 1976 in the original amount of $7,500. As of December 31, 1978, Winslow-Fox, Inc. owed petitioner on account of these notes the aggregate sum of $14,489.62. Petitioner's cost basis in his 300 shares of Winslow-Fox, Inc. stock is $3,000. As of the end of 1978, we find that these notes and these shares of stock were totally worthless. Section 165(g)(1) provides: (1) GENERAL RULE.--If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, *566 on the last day of the taxable year, of a capital asset. Respondent's regulations further provide that: (c) Capital loss. If any security which is a capital asset becomes wholly worthless at any time during the taxable year, the loss resulting therefrom may be deducted under section 165(a) but only as though it were a loss from a sale or exchange, on the last day of the taxable year, of a capital asset. See section 165(g)(1). The amount so allowed as a deduction shall be subject to the limitations upon capital losses described in paragraph (c)(3) of Sec. 1.165-1. [Sec. 1.165-5(c), Income Tax Regs.] In order to establish a loss on stock, the burden is on the taxpayer to establish identifiable events from which to conclude that the stock has become worthless. Boehm v. Commissioner,326 U.S. 287, 292 (1945). Such identifiable events include the appointment of a receiver where it is clear that liabilities exceed assets and there is no reasonable hope or expectation that assets will exceed liabilities in the future. Morton v. Commissioner,38 B.T.A. 1270, 1278-1279 (1938), affd. 112 F.2d 320 (7th Cir. 1940); *567 see also Scifo v. Commissioner,68 T.C. 714 (1977). The identifiable events in this case are the receivership, the concession of insolvency and the court's orders liquidating the corporation and appointing the receiver. These events all occurred during the calendar year 1978. As of December 31, 1978 there was no hope or expectation, reasonable or otherwise, that the corporation would acquire sufficient assets in the future to offset its liabilities. Hence petitioner is entitled to a long-term capital loss as of December 31, 1978 in the amount of $3,000, his basis in his Winslow-Fox, Inc. stock. The deduction for bad debts arises under section 166. The fact that a bad debt is not *568 due at the time it becomes worthless is irrelevant. Section 1.166-1(c), Income Tax Regs. The only issues before us are the amounts of indebtedness outstanding and the year of worthlessness, if in fact worthless. No contention is made by petitioner that these were business bad debts, and respondent has not contended that the stockholder loans were in fact contributions to capital, although that would be immaterial in this case. In determining whether a debt is worthless, all pertinent evidence is to be considered. Section 1.166-2(a), Income Tax Regs. The issue is one of fact. Our finding that in the year 1978, debts owing to petitioner amounting to $14,489.62 became wholly worthless concludes the matter. Petitioner is entitled to a short-term capital loss for 1978 in the amount of $14,489.62. Section 1.166-5(a)(2), Income Tax Regs. Both losses are subject to the limitations of sections 1211 and 1212. Decision will be entered under Rule 155.
Footnotes
1. The grantee in the 1972 deed is described as "William L. Fox and Florence E. Fox, his wife." There is no other evidence as to the nature of the title acquired but since the parties appear to have assumed the deed created a tenancy in common, and that status is consistent with the sheriff's sale, we made this assumption as well.↩
2. On this record it is not clear when the purchasers of the house inspected it, whether before or after July 22, 1976 when Mrs. Fox acquired title to petitioner's undivided one-half interest.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. See also section 1.262-1(b), Income Tax Regs. which provides: (4) Losses sustained by the taxpayer upon the sale or other disposition of property held for personal, living, and family purposes are not deductible. * * *↩
5. The memorandum opinion may be found at 12 T.C.M. 52↩, 22 T.C. Memo P-H par. 53,030. 6. See also Henry v. Commissioner,T.C. Memo. 1983-277; Richardson v. Commissioner,T.C. Memo. 1978-322; McAuley v. Commissioner,T.C. Memo. 1976-276↩.
7. The circumstances as outlined by petitioner in his testimony would appear prima facie to indicate that petitioner may have been wrongfully deprived of the value of his one-half interest in the Tequesta property. However, the characterization of such events is a matter of state law and petitioner has so far been unsuccessful in state court litigation against his former wife and her lawyer. Thus, there are no facts in this record to support a claim by petitioner of a theft loss under section 165(c)(3)↩. Moreover, that litigation appears to be still pending.
8. Respondent's regulations are explicitly to the effect that if, in the year of discovery of the theft, there exists a claim for reimbursement, deduction is postponed until disposition of the claim is final. Secs. 1.165-1(d)(2)(i) and 1.165-8(a)(2), Income Tax Regs.↩ Petitioner can still pursue this claim unless barred by the running of the period of limitations under state law.
9. The Office of the Florida Secretary of State shows dissolution on December 5, 1979 but we assume the order of the Circuit Court would take precedence. What is more important for our purposes is the appointment of the receiver in April 1978. ↩
10. We take judicial notice of the land records of the County and of the court records pertaining to the receivership to the extent not before us as exhibits. ↩
11. During the fiscal year which ended July 31, 1980, the receiver discovered additional cash in the amount of $2,340. As of December 31, 1979, the last year before the Court, the assets of the receivership consisted of less than $3,000, against which the costs and expenses of the receivership would be a first claim. Hence this increased cash, even were we to assume that it was on hand and available on December 31, 1978, would be insignificant.↩
12. A number of payments on various debts of Winslow-Fox, Inc. to petitioner and Mrs. Fox were made at various times. Respondent apparently takes the position that $4,000 was paid on one or more of these notes. While there is some confusion as to the matter, based upon the entire record we find that the repayments were applied to other indebtedness including the September 9, 1976 note.↩